UNITED STATES of America

v.

Keith FARRIES et al., Appellant in No. 71–1608.

Appeal of Stephen FERGUSON, in No. 71–1695.

Appeal of Kenneth SWANSON, in No. 71–1836.

Appeal of Billy H. BOULWARE, in No. 71–1837.

Appeal of Alexander X. TISDALE, in No. 71–1910.

Nos. 71–1608, 71–1695, 71–1836, 71–1837, 71–1910.

United States Court of Appeals, Third Circuit.

Argued Feb. 14, 1972.

Decided April 7, 1972.

As Amended April 12, 1972.

Myron M. Moskowitz, Shamokin, Pa., for Keith Farries.

William H. Nast, Jr., Harrisburg, Pa., for Stephen Ferguson.

Gilbert E. Petrina, Harrisburg, Pa., for Kenneth Swanson.

James H. Rowland, Jr., Rowland & Rowland, Harrisburg, Pa., for Billy H. Boulware.

Carl B. Stoner, Harrisburg, Pa., for Alexander X. Tisdale.

Alfred L. Hantman, Gregory C. Jones, Criminal Division, Dept. of Justice, Washington, D. C., for appellee.

Before ADAMS, GIBBONS and ROSEN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The appellants Farries, Boulware, Tisdale, Ferguson and Swanson appeal from sentences imposed following guilty verdicts in a jury trial on an indictment charging various offenses which took place during a mutiny and riot at the United States Penitentiary, Lewisburg, Pennsylvania on February 1, 1970. On April 20, 1970, a 22 count indictment was returned in the Middle District of Pennsylvania against the appellants and two other defendants, Day and McGee. The indictment charged the defendants separately with twenty substantive violations of 18 U.S.C. § 111.[1] Count 1 charged that Farries and Boulware "did instigate, connive, willfully attempt to cause, and assist a mutiny and riot" in violation of 18 U.S.C. § 2[2] and 18 U.S.C. § 1792[3]. Count 2 charged that Tisdale, McGee, Ferguson, Swanson and Day "did willfully attempt to cause, and assist a mutiny and riot" in violation of

1. "Assaulting, resisting, or impeding certain officers or employees

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than threee years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. "Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. "Mutiny, riot, dangerous instrumentalities prohibited

Whoever instigates, connives, willfully attempts to cause, assists, or conspires to cause any mutiny or riot, at any Federal penal or correctional institution, or without the knowledge or consent of the warden or superintendent, conveys into such institution, or from place to place therein any tool, device, or substance designed to cut, abrade, or destroy the materials, or any part thereof, of which any building of such institution is constructed, or any other substance or thing designed to injure or destroy any building, or any part thereof, of such institution; or

Whoever conveys into such institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—

Shall be imprisoned not more than ten years."

the same statutes. A separate attorney was appointed for each appellant in the district court pursuant to the Criminal Justice Act of 1964.[4] The attorneys made numerous pretrial motions directed to, among other things, the indictment, the venue, the sufficiency of pretrial discovery permitted by the court, and their ability to prepare adequately when their clients were in administrative segregation in the penitentiary. Each of the contentions advanced on behalf of the appellants was fully and carefully considered in the district court. Some were ruled on in advance of trial and others, in particular those directed to venue, were deferred to the trial. That trial took place between January 18, 1971 and February 25, 1971. On the first day one defendant, McGee, pleaded guilty to two counts of the indictment. The jury's verdict found one defendant, Day, not guilty. It found all of the other defendants guilty on at least two counts of the indictment. Farries was found guilty on Count 1 of instigating the riot and mutiny and on four counts of assaulting four correctional officers. He was acquitted on one assault count. Boulware was found guilty on Count 1 of instigating the riot and mutiny and on six counts of assaulting six correctional officers. Tisdale was found guilty on Count 2 of willfully attempting to cause and assist a mutiny and riot and on one count of assaulting a correctional officer. Ferguson was found guilty on Count 2 of willfully attempting to cause and assist a mutiny and riot and of two counts of assaulting two correctional officers. Swanson was found guilty on Count 2 of willfully attempting to cause and assist a mutiny and riot and on two counts of assaulting a single correctional officer with two different dangerous weapons.

At the trial the defendants were vigorously and ably represented, and they were afforded every reasonable latitude by the court in presenting their defense. After the verdicts the defendants made timely motions for a new trial, advanc-

ing twenty separate grounds. These were carefully considered by the district court and rejected in a reported opinion. United States v. Farries, 328 F.Supp. 1034 (M.D.Pa.1971). On appeal these twenty grounds have been compressed to thirteen, which for present purposes we have further compressed.

### I. Objections to the Jury Panel

Appellants made a pretrial motion pursuant to Fed.R.Crim.P. 21 for a change of venue either to a different place of holding court within the Middle District of Pennsylvania or to a different district. They contended that it was impossible to obtain a fair and impartial jury in the Lewisburg vicinage (1) because of local pretrial publicity, (2) because of the dominant position in the local economy of the Lewisburg Penitentiary, and (3) because Lewisburg jurors would be antipathetic to them as Black Muslims. The district court denied this motion without prejudice to its renewal at the voir dire. It was renewed at that time, and the court conducted a thorough examination of the prospective jurors. It granted defendants' challenges for cause with extreme liberality, and it permitted each defendant four peremptory challenges. The motion for a change of venue was denied.

There is no reason to suspect that the jury was anything but fair and impartial. In the first place the nature of the pre-trial publicity to which the court's attention was directed was not at all like that involved in Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L. Ed.2d 1250 (1959); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), or Sheppard v. Maxwell, 384 U. S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). It consisted of news reports of the riot and of the injuries suffered by the guards, made at the time of the events, and of a brief report that the

4. 18 U.S.C. § 3006A.

trial was about to commence and that the United States Marshal had undertaken the problem of courtroom security. We have made an independent evaluation of the circumstances. Sheppard v. Maxwell, 384 U.S. at 362, 86 S.Ct. 1507. We conclude that there was no substantial likelihood that the media reports which are disclosed in the record would interfere with the obtaining of a fair and impartial jury. We have taken into consideration not only the nature and content of the media reports relied upon but also the fact that at the voir dire few of the prospective jurors had any prior knowledge of the case. There was no reasonable likelihood that in the absence of a change of venue a fair trial could not be had, and these motions were properly denied. *See* Standard 3.2(c), Change of venue or continuance, Standards Relating to Fair Trial and Free Press, A.B.A. Project on Minimum Standards for Criminal Justice (1966).

As to the contentions of actual antipathy against Black Muslims, and of prejudice arising from the dominant position of the penitentiary in the economic life of Lewisburg, the extensive voir dire examination completely dispels any suspicion that either factor influenced the jury.

■ Defendant Swanson advances a refinement of the foregoing contentions. Prior to trial he moved under Fed.R. Crim.P. 23(a) to be tried without a jury. He contended that the three factors already discussed plus the fact that the jury must inevitably know from the nature of the charges that he was a convicted felon, made it mandatory that his request for a non-jury trial be granted. The Government took the position that it had no objection to a trial without jury if all defendants would waive a jury, but that because of the enormous expense and the serious security problems involved in a trial in which the defendants and many witnesses were inmates of various federal penitentiaries it would not consent to a severance. Under these circumstances the denial of this motion was proper. Singer v. Unit-

ed States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). A different issue might have been presented had we concluded that there was a substantial likelihood that pre-trial publicity had tainted the jury panel. *Cf.* Standard 3.3, Waiver of jury, Standards Relating to Fair Trial and Free Press, *supra.* A different issue might also have been presented had Swanson been willing to be tried simultaneously, with the court deciding his guilt and the jury deciding the guilt of the others. We express no view as to how such a request should have been disposed of. The record is clear that Swanson's motion was advanced in hopes of obtaining a severance. In these circumstances it was properly denied.

■ One other contention with respect to the jury panel arose out of an incident which took place during the voir dire. A prospective juror in the presence of other members of the jury panel, volunteered the information that his wife had advised him that one defendant had pleaded guilty. Defense counsel made a motion for a mistrial. Relying upon United States v. Restaino, 369 F.2d 544 (3d Cir. 1966) the district court declined to grant a mistrial, but instead gave an appropriate cautionary instruction based on that suggested in *Restaino,* 369 F.2d at 546 n. 3. This course was, in the circumstances disclosed in this record, entirely proper.

We conclude that the defendants were tried by a fair and impartial jury.

## II. Deprivation of a Preliminary Hearing

■ The Government presented evidence to the grand jury which in turn returned an indictment. After the indictment was returned the defendants asked for a preliminary hearing. Fed. R.Crim.P. 5(c). This request was rejected. We have held that once an indictment has been returned a preliminary hearing is not required. **United States v. Conway, 415 F.2d 158, 160–161 (3d Cir. 1969), cert. denied, 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970); Rivera v. Government of the**

Virgin Islands, 375 F.2d 988 (3d Cir. 1967). *Compare* Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557 (1967) with Federal Magistrates Act of 1968, 18 U.S.C. § 3060. The appellants suggest that Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), compels a reconsideration of our Conway decision. Cf. Adams v. Illinois, 404 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (Mar. 6, 1972). But it does not follow that because counsel must be afforded when a preliminary hearing is held the holding of a preliminary hearing is constitutionally required. Indeed the opinion in Coleman v. Alabama suggests the contrary. 399 U.S. at 8, 90 S.Ct. 1999. *See* Jaben v. United States, 381 U.S. 214, 220, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); United States ex rel. Hughes v. Gault, 271 U.S. 142, 149, 46 S.Ct. 459, 70 L.Ed. 875 (1926); Lem Woon v. Oregon, 229 U.S. 586, 590, 33 S.Ct. 783, 57 L.Ed. 1340 (1913).

### III. Contentions relating to Discovery and Preparation

■ Following the incidents at Lewisburg Penitentiary on February 1, 1970 the appellants were held apart from the general prison population in administrative segregation. They contend that because they were separated from the general prison population they were unable accurately to determine which of the other inmates might be witnesses favorable to the defense. This, they say, amounted to a deprivation so serious as to violate the Sixth Amendment guarantees of assistance of counsel and compulsory process for the production of witnesses.

The contention that appellants were not able adequately to prepare a defense because of their administrative segregation is simply not borne out by the record. From the time of their appointment on September 18, 1970, when the appellants were arraigned, defense counsel were afforded the opportunity on reasonable notice to visit the penitentiary at any time to talk with their clients and to interview potential witnesses. The district court, for reasons relating to potential security risks at the penitentiary, denied appellants' motions to be released into the general prison population. Defense counsel were given a list of all inmates at Lewisburg on February 1, 1970 and a separate list of those who had been transferred elsewhere since that date. The Government arranged that defense counsel might have access to any inmate witness they might want to interview. The court issued writs of habeas corpus *ad testificandum* for forty-one inmate witnesses and subpoenas for four non-inmate witnesses. The court arranged that the defendants be taken to a place in the penitentiary where they could observe all other inmates at the breakfast and dinner meals and point out any whom they wanted interviewed. The court also caused an announcement to be made over the institution's public address system advising all inmates that anyone who desired to convey information of value to the defendants should send a letter directly to the court, and advising further that these letters would not be opened by either the court or the Government but would be turned over unopened to defense counsel. The court arranged that appellants could confer together in private each evening during the trial. The record is clear that the court took every reasonable step consistent with prison security and witness safety to expedite the efforts of defense counsel and of the appellants to prepare and present whatever defense might have been available. In its opinion on the motions for a new trial the court deals with specific motions for inspection of grand jury minutes, for a list of the Government's lay and expert witnesses, and for a bill of particulars. The reasons set forth, 328 F.Supp. at 1037 et seq., fully justify the court's rulings.

### IV. Trial Errors

■ The appellants advance three alleged trial errors. One such alleged er-

ror relates to the identification testimony of a number of witnesses to whom, prior to the indictment, and hence prior to arrest, agents of the Federal Bureau of Investigation showed groups of photographs. Each of the witnesses who were shown photographs testified that his in-court identification was the product of an independent source, although three witnesses testified that by using the photographs they were able to put a name on a face they already knew. The record discloses nothing impermissibly suggestive about the manner in which the photographs were used. The photographs were shown to witnesses who already knew the defendants from frequent prison contact. The district court found that "no evidence was adduced by defense counsel on cross-examination which would in any way lead this Court to the conclusion that the circumstances surrounding the photographic identification were unduly suggestive." 328 F. Supp. at 1041. The in-court testimony of witnesses who had seen photographs during an investigative stage of the case was proper. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The fact that the defendants, as well as many of the witnesses, were in custody serving sentences on unrelated convictions does not put them within the ambit of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967).

■ Appellants contend that the court erred in permitting the Government, in the cross-examination of the defense witness Bouton, to establish a specific act of misconduct, escape from a mental institution. The trial court had discretion to permit such cross examination. United States v. Sweeney, 262 F. 2d 272, 276–277 (3d Cir. 1959).

■ Finally defendants urge that it was error for the court sua sponte to advise a defense witness, possibly a participant in the riot, of his right to assert the privilege against self incrimination. The court has discretion so to advise a witness, and to afford counsel to an indigent witness. *See* Hamer v.

United States, 259 F.2d 274, 282 (9th Cir. 1958), cert. denied, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959). *Cf.* Nutter v. United States, 412 F.2d 178, 183 (9th Cir. 1969), cert. denied, 397 U. S. 927, 90 S.Ct. 935, 25 L.Ed.2d 107 (1970). The advice was given out of the presence of the jury. A cautionary instruction was given immediately when the witness Powell did assert the privilege. No further instruction was requested. There is no error here.

### V.  Objections to the Charge

**A. Ferguson's request to charge on mere participation**

Defendant Ferguson was found guilty under Count 2 of the indictment of willfully attempting to cause, and assist a mutiny and riot at a penal institution. 18 U.S.C. § 1792. He contends that the evidence shows him to have been a mere participant in the riot. He duly requested a charge that § 1792, while it prohibits instigation of or connivance to cause a riot or mutiny, does not prohibit mere participation. The court charged that a finding of willful participation would justify a guilty verdict under § 1792.

■ Even accepting Ferguson's definition of the § 1792 offense, there was ample evidence to sustain the conviction when judged by the standard of United States v. Carlson, 359 F.2d 592 (3d Cir. 1966). But the rule that at this stage the evidence must be looked at in the light most favorable to the Government would not overcome the effect of an erroneous charge. Thus we must consider whether under 18 U.S.C. § 1792 a mere participant in a prison riot may be convicted. Ferguson relies upon a dictum in United States v. Rodgers, 419 F.2d 1315, 1317 (10th Cir. 1970) which says:

"The plain words of 18 U.S.C. § 1792 limit the offense to the instigation of or connivance to cause a riot or mutiny and does not include participation therein."

With deference to the Tenth Circuit, the plain words of the statute do no such thing. Section 1792 reads:

"Whoever instigates, connives, willfully attempts to cause, *assists*, or conspires to cause any mutiny or riot . . ." (emphasis supplied)

The word "assists" must be given its plain meaning. One who willfully participates in a mutiny or riot plainly "assists . . . any mutiny or riot" and thereby violates the statute. Moreover Count 2 also charged a violation of 18 U.S.C. § 2(a):

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

Certainly a willful participant in a mutiny or riot is an aider and abetter of one who causes a riot.

■■■ The defendants also requested a charge that certain photographic exhibits showing the nature and extent of injuries inflicted upon four of the officers should only be considered against those defendants charged with assaulting the particular officers depicted in the photographs. The court refused this charge on the ground that the photographs were properly admissible against all defendants charged in Counts 1 and 2 to prove the extent of the force and violence resorted to by the rioters. This ruling was correct. The photographs plainly are probative of the riot and mutiny.

In all other instances where the court rejected a defendant's request to charge, the substance of the request was included in the court's charge.

### VI. Duplicitous Counts

■■■ Swanson moved to consolidate Counts 20 and 21 of the indictment or in the alternative to dismiss Count 21 as redundant. Count 20 charges that Swanson assaulted Officer Charles Hargraves with a deadly weapon, a telephone, in violation of 18 U.S.C. § 111. Count 21 charges that he assaulted the same officer with a dangerous weapon, a shod foot, in violation of the same statute. He relies on Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L. Ed.2d 199 (1958), as authority for the proposition that hitting the officer on the head with a telephone and then kicking him when he fell to the floor was just a single assault. Certainly Officer Hargraves wouldn't agree, nor do we.

*Ladner* is not controlling. There a single discharge from a shotgun—a single act on the part of the defendant—injured two officers. The court held that there had been only one violation of 18 U.S.C. (1940 ed.) § 254 (now 18 U.S.C. § 111 (1971)). Here, the evidence discloses, Swanson acted twice. First he struck Hargraves with a telephone. After Hargraves fell to the floor Swanson kicked him.

Moreover it is questionable whether any relief would lie assuming Swanson were correct about the duplicity between Counts 20 and 21. He received concurrent sentences on these Counts. *See* United States v. Leach, 429 F.2d 956, 960 (8th Cir. 1970) cert. denied, 402 U. S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971).

The judgment of the district court will be affirmed.