*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0034P (6th Cir.)
File Name: 00a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

PHILLIP CHARLES GREEN
(97-6383); SANTOS NEGRON
(97-6384); LARRY WADE
WALTERS, JR. (97-6385),
    *Defendants-Appellants.*

Nos. 97-6383/
6384/6385

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-20098—Jerome Turner, District Judge.

Argued: December 14, 1999

Decided and Filed: January 21, 2000

Before: NELSON and DAUGHTREY, Circuit Judges;
BERTELSMAN, District Judge.*

---

*The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Robert C. Irby, Memphis, Tennessee, Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, William F. Travis, Southaven, Mississippi, for Appellants. Jennifer Lawrence Webber, OFFICE OF THE U.S. ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Robert C. Irby, Memphis, Tennessee, Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, William F. Travis, Southaven, Mississippi, for Appellants. Jennifer Lawrence Webber, OFFICE OF THE U.S. ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

BERTELSMAN, District Judge. The appellants, Phillip Charles Green, Santos Negron, and Larry Wade Walters, Jr., appeal from their respective convictions and sentences imposed for their part in a prison riot. Walters appeals an enhanced sentence pursuant to U.S.S.G § 3B1.1. Green and Negron appeal their convictions as participants in the riot and maintain they are not guilty of causing or assisting a riot under 18 U.S.C. § 1792.

These cases arise from an inmate disturbance which erupted at the Federal Correctional Institution in Memphis, Tennessee, on October 20, 1995, at approximately 12:15 p.m. The disturbance, which began as a protest by inmates based on the alleged disparity in sentences for crack cocaine and powdered cocaine offenders, quickly grew into a riot. Inmates started fires in housing units and other buildings, broke windows, and destroyed government property. Among the property destroyed was that of Unicor, a company that used inmate labor to manufacture electronic cables for the

Defense Department. The total cost of the rioting to the government was $3,445,165.

During the course of the riot, over 100 inmates were treated for smoke inhalation. Seven inmates were transported to outside hospitals for treatment. Four prison staff members, along with a firefighter, were transported to area hospitals for treatment for smoke inhalation.

On January 31, 1997, a federal grand jury sitting in the Western District of Tennessee returned an eight-count indictment charging Brian Torres,[1] Walters, Negron, and Green with aiding and abetting, instigating, conniving, willfully attempting to cause, and assisting a riot in a federal prison in violation of 18 U.S.C. § 1792, and willfully and maliciously destroying government property in violation of 18 U.S.C. § 1361. Negron was additionally charged with the setting of a fire within the special territorial jurisdiction of the United States in violation of 18 U.S.C. § 81.

Appellants received a jury trial in this matter commencing on April 29, 1997. The jury returned a verdict on May 14, 1997. Walters was convicted on one count of rioting in a federal prison and three counts of destruction of government property. Negron was convicted on one count of rioting in a federal prison and one count of destruction of government property. He was acquitted on the count for setting fire in the territorial jurisdiction of the United States. Torres was convicted on one count of rioting in a federal prison and one count of destruction of government property. Green was convicted on one count of rioting in a federal prison and was acquitted on one count of destruction of government property.

Based on his conviction and criminal background, Walters was sentenced to ninety-two months of imprisonment to run consecutive to his current term of imprisonment and three

---

[1]Torres was convicted at trial with the other defendants. However, he did not appeal his conviction and/or sentence.

years of supervised release. Negron received thirty-seven months of imprisonment to run consecutive to his current term of imprisonment and three years of supervised release. Green received eighty-four months of imprisonment to run consecutive to his current term of imprisonment and three years of supervised release. Walters, Green and Negron each filed a timely notice of appeal.

The only argument Walters presents on appeal is that the district court erred in enhancing his base offense level by four levels for being an organizer or leader of criminal activity pursuant to U.S.S.G § 3B1.1.[2] This determination involves a question of fact and is reviewed for clear error. *United States v. Layne*, 192 F.3d 556, 578 (6th Cir. 1999) (citing *United States v. Williams*, 962 F.2d 1218, 1227 (6th Cir.), *cert. denied*, 506 U.S. 892, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992)). "A finding is clearly erroneous if, after studying the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989)).

In making a determination regarding enhancement under U.S.S.G § 3B1.1, "a district court should consider such factors as the exercise of decisionmaking authority, the nature of the defendant's participation in the commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, and the

---

[2]U.S.S.G § 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

verdict. When a criminal defendant argues a "material" variance in the context of a bill of particulars, he must demonstrate that the variance prejudiced "substantial rights" and that the variance took him by surprise or placed him at risk of double jeopardy. *United States v. Hart*, 70 F.3d 854 (6th Cir. 1995), *cert. denied*, 517 U.S. 1127, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996) (citations omitted). "[A] variance is immaterial if it does not impair the defendant's ability to defend himself through failing to identify the nature of the charge." *Id. (*citing *United States v. Robinson*, 974 F.2d, 575, 578 (5th Cir. 1992)).

The evidence in this case clearly supports the conclusion that Green had an active role in the riot sufficient to support his conviction. Furthermore, any variance between the evidence and the bill of particulars is immaterial, and in no way was Green taken by surprise or placed at any risk of double jeopardy in this case. Thus, this argument is without merit.

Therefore, finding no error in this matter, we hereby **AFFIRM** the judgment of the trial court in all respects.

Likewise, in the present case, to interpret the statute as Green and Negron ask this court to would require a finding that they engaged in no criminal activity although it is clear they took part in the prison riot.

Negron was one of a group of inmates who partially destroyed cable assemblies that were in the process of being built, and he threw a chair at a window. Green also broke glass and threw chairs. Obviously Congress did not intend that such criminal activity go unpunished. Such a result would be absurd and do nothing to deter future riots.

Therefore, we conclude the better reasoned interpretation of the word "assists" as used in 18 U.S.C. § 1792 is that of the Third and Fifth Circuits.

Thus, we hold that the fair and ordinary meaning of 18 U.S.C. § 1792 includes the participation in a prison riot and is prohibited and punishable as a crime. Hence, we affirm the district court.

Appellant Green advances several other arguments which can be disposed of in a summary manner. He alleges that the district court erred in curtailing his counsel's cross examination of government witnesses. Green, however, fails to demonstrate how he was prejudiced by the trial court's moving the questioning along.

Moreover, the standard of review of a trial court's ruling on the admissibility of testimony and other evidence is for an abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). Even in the case of a finding of abuse of discretion, a new trial is not required unless substantial rights are affected, as an abuse of discretion is otherwise harmless error. We find that the trial court did not abuse its discretion in limiting some of the questioning on cross examination. Hence, we reject Green's argument on this issue.

Green also argues that the government's testimony did not conform to the bill of particulars enough to support a guilty

degree of control exercised over others." *Wright v. United States*, 182 F.3d 458, 466-67 (6th Cir. 1999) (citing U.S.S.G § 3B1.1 cmt. n. 4). These factors are only designed to provide guidance to the sentencing court, and there is no requirement that each factor be met. *See United States v. Ospina*, 18 F.3d 1332, 1337 (6th Cir.), *cert. denied*, 512 U.S. 1226, 114 S.Ct. 2721, 129 L.Ed.2d 846 (1994)).

The government bears the burden of demonstrating by a preponderance of the evidence that an enhancement is justified. *See United States v. Feinman*, 930 F.2d 495 (6th Cir. 1991). Establishing that Walters recruited others to join the riot is sufficient to justify an upward departure. *See United States v. Garcia*, 20 F.3d 670, 674 (6th Cir. 1994), *cert. denied*, 513 U.S. 1159, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995) (defendant's recruitment of accomplices was a factor justifying an enhanced sentence under U.S.S.G § 3B1.1).

The record contains the trial testimony of several witnesses that Walters's role in the riot was sufficient to justify an enhancement. One witness testified that Walters encouraged other inmates to join the riot and encouraged violence. (Jesse Younger at 51/1/97 TR 294). Additionally, Walters "stated for everybody to join him before the staff did a count." (Id. at 298).

Another witness testified that Walters yelled for the other inmates to "'Take [a staff member's] [expletive deleted] keys, take his [expletive deleted] radio, we have come to get our people, let our people go', or words to that effect." (Archie Wiggins at 5/1/97 TR 360).

A third witness testified that Walters also instructed the inmates to get the staff's video cameras. (Andrew Danner at 5/2/97 TR 580-81). A final witness testified that Walters was yelling: "'[W]e (the inmates) can go in there and take the [other inmates] out[.] You all can't stop us.'" (Mike Wallace at 5/2/97 TR 622). Walters also encouraged others to join the

riot by shouting for the inmates in the Delta Housing Unit to "mount up."

This evidence is more than sufficient to establish Walters's leadership role in the riot by a preponderance of the evidence. He clearly recruited other inmates to join in the riot and directed them what to do. Thus, the district court did not err in enhancing Walters's sentence under U.S.S.G § 3B1.1.

The next issue involves Green and Negron's appeal regarding the interpretation of 18 U.S.C. § 1792, which provides that "[w]hoever instigates, connives, willfully attempts to cause, assists, or conspires to cause any mutiny or riot, at any Federal penal, detention, or correctional facility, shall be imprisoned not more than ten years or fined under this title, or both."

Negron and Green argue on appeal they were only mere participants in the prison riot and that such does not constitute a violation under 18 U.S.C. § 1792. This is an issue of first impression in this circuit, although other circuits have spoken on the issue with differing voices. Therefore, there exists a need for clarity in this circuit regarding the interpretation of 18 U.S.C. § 1792. Since this matter involves statutory construction, it is reviewed *de novo* by this court. *See United States v. Kassouf*, 144 F.3d 952, 955 (6th Cir. 1998).

In *United States v. Rodgers*, 419 F.2d 1315, 1317 (10th Cir. 1969), the Tenth Circuit held that "[t]he plain words of 18 U.S.C. § 1792 limit the offense to the instigation of or connivance to cause a riot or mutiny and does not include participation therein." However, the Third Circuit openly rejected the Tenth Circuit's holding in *Rodgers* in *United States v. Farries*, 459 F.2d 1057, 1063-64 (3rd Cir.), *cert. denied*, 409 U.S. 888, 93 S.Ct. 143, 34 L.Ed.2d 145(1972) The Third Circuit held that "the word 'assists' must be given its plain meaning. One who willfully participates in a mutiny or riot plainly 'assists . . . any mutiny or riot' and thereby violates the statute." *Id.* at 1064.

Thereafter, the Fifth Circuit reviewed the same issue in *United States v. Bryant*, 563 F.2d 1227, 1228-29 (5th Cir. 1977), and noted the split between the Third and Tenth Circuits. The Fifth Circuit agreed with the Third Circuit holding that "assists" as used in the statute means "willful participation." The court rejected the defendants' argument that the statute only prohibits instigating, causing, or conspiring to cause a riot. It concluded that interpreting the language in such a manner would mean that participation in a prison riot would no longer be a crime. *Id.* at 1230. The court stated that "[it] could not believe that Congress intended any such result." *Id.*

We find the following language from *Bryant* particularly persuasive.

The defendants argue that the word "assists" in the statute must be construed in context with the surrounding words in the statute, and when this is done it is clear that it means "to instigate, cause or conspire to cause" a prison riot or mutiny, and does not prohibit mere participation therein. We do not agree. The court was correct in its decision in *Farries*, supra, when it said:

The word "assists" must be given its plain meaning. One who wilfully participates in a mutiny or riot plainly "assists . . . any mutiny or riot" and thereby violates the statute.

Furthermore, *Blacks Law Dictionary*, Revised Fourth Edition, 1968, defines "assists" as follows:

To *help*, *aid*, succor, lend countenance or encouragement to; *participate* in as an auxiliary--- To *contribute effort* —.

*Id.*, 563 F.2d at 1229-30 (internal citations and quotations omitted) (emphasis supplied).