RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0263P (6th Cir.)
File Name:  02a0263p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

DARRYL CLEAVES,
          *Defendant-Appellant.*

No. 00-5854

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20079—Julia S. Gibbons, District Judge.

Argued:  April 23, 2002

Decided and Filed:  August 6, 2002

Before:  DAUGHTREY and MOORE, Circuit Judges;
SIMPSON, District Judge.[*]

_____

### COUNSEL

**ARGUED:**  Robert C. Brooks, Memphis, Tennessee, for
Appellant.  Thomas L. Parker, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

[*]The Honorable Charles R. Simpson III, United States District Judge
for the Western District of Kentucky, sitting by designation.

**ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for Appellant.    Thomas L. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

––––––––––––––

**OPINION**

––––––––––––––

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The defendant, Darryl Cleaves, was indicted along with seven co-defendants in a single-count indictment charging conspiracy to distribute in excess of five kilograms of cocaine and 100 kilograms of marijuana.  He went to trial alone, prior to the release of the Supreme Court's opinion in *Apprendi v. New Jersey*, 580 U.S. 466 (2000), and was convicted by a jury that had not been instructed to find either the type or the quantity of controlled substances involved in the conspiracy.  At sentencing, the district court found  that the record "plainly" sustained a conspiracy to distribute between five and 15 kilograms of cocaine and imposed a life sentence based on that finding and on a statutory enhancement resulting from the defendant's prior felony drug convictions.  Citing *Apprendi* and *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), the defendant now insists that he is subject to a sentence of no more than ten years, the statutory maximum for conspiracy to distribute less than 50 kilograms of marijuana.[1]    The government responds by arguing that the district court did not err in finding that Cleaves was liable for conspiracy to distribute cocaine, but concedes that the case must be remanded for resentencing or retrial on the length of the sentence to be imposed because the jury did not make a specific finding on the quantity involved in the conspiracy.

––––––––––––––

[1] The defendant also raises the possibility that the Supreme Court may reverse itself and extend *Apprendi* to require that "the fact of a prior conviction[ ] must be submitted to a jury and proved beyond a reasonable doubt."  In order to preserve that ground for the future, it has been included in his brief on appeal.

For the reasons set out below, we agree with the government's position.

### FACTUAL AND PROCEDURAL HISTORY

From 1997 through 1999, Darryl Cleaves, his seven co-defendants, and several other unindicted co-conspirators ran a drug-trafficking operation between Dallas, Texas, and Memphis, Tennessee. Cleaves, a resident of Memphis, was introduced to Dallas drug suppliers Damien Gill and Miguel Sarduy-Cruz through a friend, Fred Jeter. Jeter vouched for the reliability of Cleaves to the Dallas drug contacts and was intermittently involved in the actual purchases of both cocaine and marijuana.

Shortly after being introduced to Sarduy-Cruz, Cleaves began buying cocaine from him on a regular basis. Cleaves made at least five, and possibly as many as ten, trips to Dallas in the company of another friend, Robert Blackburn. During each of those trips, Cleaves purchased one or two kilograms of cocaine. After five such transactions, Cleaves also began sending a courier, Randolph "Cowboy" Liggens, who would carry kilograms of cocaine for Cleaves on a bus traveling from Dallas to Memphis. Having established an ongoing relationship with Sarduy-Cruz, Cleaves visited him for the purpose of buying cocaine in the company of several of the other co-defendants, including Jeter. Additionally, Cleaves asked Sarduy-Cruz to create a secret compartment in his automobile for the purpose of transporting cocaine between Dallas and Memphis. Sarduy-Cruz agreed to do so, building a compartment in the floor of the defendant's car that was exactly the size of a kilo block of cocaine. Police officers later discovered it in a search of Cleaves's automobile.

During one of the trips between Dallas and Memphis, Jeter and Anthony Tyrone Harris were stopped on Interstate 30 by a Texas police officer who found a small amount of cocaine in the trunk of the car, which had been leased the day before in Memphis by Cleaves.

After a series of sting operations, the defendants were jointly indicted, charged with a conspiracy to "unlawfully, knowingly and intentionally possess   with the intent to distribute and cause the possession with the intent to distribute an amount in excess of 5 kilograms of cocaine" and "to unlawfully, knowingly, and intentionally possess with the intent to distribute and cause the possession with intent to distribute an amount in excess of 100 kilograms of marijuana."   The indictment further alleged that the conspiracy "consisted of an agreement between and among the various co-conspirators, allowing for each member thereof to perform certain specific functions designed, when each conspirator performed his or her part to obtain cocaine and/or marijuana, [to] distribute cocaine and/or marijuana within the Western District of Tennessee, obtain the proceeds for the sale of said cocaine and/or marijuana and deliver said proceeds to the ultimate suppliers of the cocaine and/or marijuana."

Because of the wording of the indictment, the district court and the prosecutor recognized that a special verdict might be indicated -- one that would require the jury to determine what kind of controlled substance, marijuana or cocaine (or both), was involved in the conspiracy. Ultimately the court reasoned that because of the recidivism enhancement that would be applied to Cleaves's sentence in the event of his conviction, the maximum sentence would be the same regardless of the type of drug involved.   The court therefore declined to instruct the jury to return a special verdict and the defendant concurred in this decision.  Moreover, without the benefit of *Apprendi* to guide her, the district judge also failed to instruct the jury that it must find the quantity of the controlled substances involved in the conspiracy beyond a reasonable doubt.  Instead, the jury was charged:

Ladies and gentlemen, one thing additional.  The indictment mentions a particular quantity of cocaine and a particular quantity of marijuana.  The government does not have to establish the exact quantity of controlled substance that is alleged in the indictment.  It is sufficient

automobile on January 13, 1998, and recovered a small amount of cocaine from a jacket in the car.  The automobile, rented by Cleaves, was occupied by two of the other co-conspirators, Jeter and Harris.  Additionally, the fact that a police search revealed that Cleaves's car was outfitted with a hidden compartment designed for cocaine transport could have led a reasonable jury to conclude that Cleaves was involved in a drug conspiracy without any conclusive determination of the amount of cocaine involved.  There is no indication on the record that any large amount of cocaine was ever recovered by the authorities or entered into evidence at trial.[4]

## C. The Defendant's Prior Convictions

Finally, the defendant argues that the government should have been required to submit evidence of his prior convictions to the jury in order to establish recidivism beyond a reasonable doubt.  However, the law is still well-settled that the existence of prior convictions and their effect on a defendant's sentence are matters to be determined by the district court.  *See United States v. Gatewood*, 230 F.3d 186 (6th Cir. 2000) (en banc) (*Apprendi* explicitly exempts prior convictions from those factors that must be proven to the jury beyond a reasonable doubt).

### *CONCLUSION*

For the reasons set out above, we AFFIRM the defendant's conviction for conspiracy to distribute cocaine.  However, we VACATE the sentencing order and REMAND the case to the district court for resentencing in conformity with this opinion.

---

[4] It is telling that the prosecutor, despite charging a specific drug amount in the indictment, requested a jury instruction making it clear that the jury need not find any specific drug amount when determining Cleaves's guilt.  In requesting the instruction the prosecutor himself expressed concern that he might not have established the existence of more than five kilograms of cocaine beyond a reasonable doubt.

type was improperly determined by the trial judge rather than the jury).

Accordingly, the district court's post-verdict determination of the drug involved altogether fails to impugn the fairness, integrity, or public reputation of the judicial proceedings in this case. As the Supreme Court recently explained in *United States v. Cotton*:

> . . . [T]he fairness and integrity of the criminal justice system depends on meting out those inflicting the greatest harm on society the most severe punishments. The real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial.

122 S.Ct. at 1787. Hence, we find no reversible error in connection with the district court's decision to forego a special verdict as to the drug type.

## B. The Drug Amount

In contrast with the district court's determination of the drug type, however, we must conclude that the determination of the drug amount is reversible error requiring re-sentencing. The testimony in the record concerning the amount of cocaine involved in the conspiracy is speculative. Miguel Sarduy-Cruz, a co-conspirator and the primary government witness to testify to the amount of cocaine handled by Cleaves, was unable to recall with any degree of certainty the number of trips made with Cleaves or the amount of drugs purchased on each trip.

Further, the jury could easily have dismissed Sarduy-Cruz's testimony and still returned a guilty verdict based upon the testimony of other witnesses, including Texas Police Officer Kent Basinger, who testified that he stopped a Buick LaSabre

that, if the government establishes that some quantity of controlled substance was in fact, as alleged, was in fact the subject of the acts alleged in the indictment. But the precise amount, a finding as to the precise amount is not necessary for you to make in determining whether the defendant is guilty or not guilty of the offenses with which he was charged.

Following the general verdict finding Cleaves guilty of conspiracy, the district court found, by a preponderance of the evidence, that the controlled substance for which Cleaves was liable was cocaine and that the amount was in excess of five kilograms. Based on his conviction, along with three prior felony drug convictions, he received a sentence of life imprisonment under 21 U.S.C. 841 (b)(1)(A). He now appeals his sentence.

### DISCUSSION

## A. The Drug Type

Cleaves argues on appeal that in assessing his sentence, the district court improperly determined the type of drug involved in the conspiracy, in violation of *United States v. Dale*. 178 F.3d 429, 430 (6th Cir. 1999). Because Cleaves did not object to the jury instruction that produced a general verdict at his trial -- indeed, he acquiesced in it -- we review his claim for plain error only.[2] *See* Fed. R Crim. Pro. 52(b); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). Plain error

---

[2] The burden of requesting a specific verdict logically falls on the government. *See United States v. Barnes*, 158 F.3d 662, 672 (2d. Cir. 1998) (holding that it is the government's burden to request a special verdict); *United States v. Garcia*, 37 F.3d 1359, 1369-70 (9th Cir. 1994) ("When the information sought in the special verdict is relevant to the sentence to be imposed, it is the duty of the government to seek a special verdict and we will review the sentence de novo.") However, in this case the defendant was asked if he was satisfied with the district court's inclination to not request a specific verdict, and he replied that he was. Hence, the defendant did not properly preserve the *Dale* claim for appellate review. 178 F.3d 429.

review is narrow in scope, involving (1) a finding of error (2) that is plain and (3) that affects the defendant's substantial rights. *See Johnson v. United States*, 520 U.S. 461 (1997). Even if all three of these factors are present, we will reverse on the basis of such error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732; *see also United States v. Cotton*, 535 U.S. __ , 122 S.Ct. 1781 (2002).

Title 21 U.S.C. § 846 provides that the defendant receive "the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." In *United States v. Dale*, we held that when a conspiracy count alleges more than one substantive offense, and the verdict is general rather than specific, the defendant may not be sentenced to more than the maximum sentence for the offense with the shorter statutory maximum. 178 F.3d at 432.

At the time of trial, the district judge's decision to forego a special verdict resulted from her recognition that, given the amount of both marijuana and cocaine alleged in the indictment, conviction of conspiracy related to either drug carried the same statutory maximum. *See* 21 U.S.C. § 841 (b)(1)(A) & (B). This decision was further informed by the fact that at the time of the ruling, the trial judge was charged with the responsibility of determining the amount of drugs involved in the conspiracy. Accordingly, with the assent of both the prosecutor and the defendant, the district court held that a jury determination of the specific drug involved in the conspiracy was unnecessary. However, had the district court's ruling occurred after the Supreme Court's decision in *Apprendi v. United States*, 530 U.S. 466 (2000), the court would undoubtedly have found that because the statutory maximum for *undetermined amounts* of marijuana and cocaine differed dramatically, the jury should have been directed to make a specific finding concerning the drug involved in the offense. *Compare* 21 U.S.C. § 841 (b)(1)(C) (limiting a sentence for an unknown quantity of cocaine to 30 years) *with* 21 U.S. C. § 841(b)(1)(D) (limiting a sentence for an unknown quantity of marijuana to ten years).

Under *Apprendi*, failure to instruct the jury to determine both the type of drug, and the drug quantity involved in the conspiracy amounted to plain error. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) ("Where the law at the time of trial was settled and clearly contrary to the law at the time of appeal, it is enough that an error be 'plain' at the time of appellate consideration"). Whether the decision "affected substantial rights" is less clear,[3] but we need not resolve this issue because we find that the error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *See United States v. Cotton*, 122 S.Ct. at 1786.

The evidence that Cleaves was involved in a conspiracy to distribute cocaine was overwhelming. Given the extensive testimony detailing the many trips that Cleaves made back and forth between the source city and the sale city, each time picking up several kilograms of cocaine, and the evidence related to the secret compartment in his automobile designed for cocaine transport, the record clearly demonstrates that Cleaves was a cocaine dealer. Therefore, based upon the testimony presented at trial, we conclude that no rational jury could have found that Cleaves was involved in a conspiracy to distribute marijuana rather than cocaine. *See United States v. Bowens*, 224 F.3d 302, 314-15 (4th Cir. 2000) (overwhelming evidence concerning the drug type is sufficient to uphold a conviction and sentence where the drug

---

[3]As explained by the Supreme Court in *United States v. Cotton*, a decision that "'affects substantial rights' is most commonly understood as a decision that affected the outcome of the proceedings." 122 S.Ct. at 1786, citing *Olano*, 507 U.S. at 734. In a case such as this, it is clear that sentencing on the cocaine, rather than the marijuana affected the length of the resulting sentence. However, it seems unlikely that the error itself, failure to submit the determination of drug type to the jury, actually affected the outcome because of the overwhelming nature of the evidence presented concerning drug type. Accordingly, this court follows the analytical approach of the Supreme Court in *Cotton*, 122 S.Ct. at 1786, and in *Johnson v. United States*, 520 U.S. 461 (1997), by avoiding the "substantial rights" question and dismissing the claim on the final factor for consideration, if the error affected the fairness, integrity, or public reputation of judicial proceedings.