**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marty Allen MORRIS, Defendant–Appellant.**

**No. 01–5127.**

United States Court of Appeals, Sixth Circuit.

Sept. 25, 2002.

Before SILER, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Marty Allen Morris was indicted for and convicted of conspiring to possess and distribute methamphetamine. Morris now appeals, arguing that the evidence was insufficient to establish his guilt beyond a reasonable doubt, and that the district court's failure to give a particular jury instruction resulted in reversible error. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

The present case arises from Morris's involvement with several individuals who were distributing methamphetamine in Tennessee. Two of these individuals were Jere Apple, who lived near Nashville, Tennessee, and Ron Johnson, a resident of California. Apple and Johnson reached an agreement for the distribution of methamphetamine in the spring of 1994. Johnson sold the drugs to Apple, who was purchasing them on behalf of Wayne Maddle, an acquaintance who also lived near Nashville.

Apple made between five and seven purchases for Maddle. These purchases were initially for relatively small quantities, but their size later increased. Maddle testified that Morris, whom he had known for several years, provided money to him for the purchase of larger quantities of methamphetamine. The two men then split the drugs that were obtained from Apple.

In November of 1994, Apple met with Maddle and Morris at a Hardee's restau-

rant in Monterrey, Tennessee. Morris told Apple during this meeting about his interest in acquiring several pounds of methamphetamine.

Apple and Morris met for a second time in December of 1994. Maddle was also present at that meeting, which took place at the Star Motel in Cookeville, Tennessee. During their encounter, Maddle and Morris gave Apple $13,000 to use for the purchase of methamphetamine. Maddle testified that $9,000 of this amount was provided by Morris. According to Maddle, he and Morris planned to resell the methamphetamine that they were going to obtain from Apple.

Apple subsequently traveled to California, where he purchased two pounds of methamphetamine from Johnson. The drugs were shipped by Federal Express to the Star Motel, where Apple had a room. But Tennessee Highway Patrol Agent Tommy Callahan intercepted the drugs at the Star Motel after he learned that Apple had been arrested at the Nashville airport. A subsequent test revealed that the boxes contained 931.4 grams of methamphetamine, which amounted to more than 9,000 dosage units.

Apple agreed to cooperate with Agent Callahan after being arrested and learning that the methamphetamine had been seized. He made several telephone calls to Johnson and Maddle with the intent of persuading them to conduct their drug transactions without using him as an intermediary. In a telephone conversation between Apple and Maddle that was recorded on March 3, 1995, an unnamed individual asked Apple about the shipment of methamphetamine coming from California. This unnamed individual was identified at trial as Morris.

During two subsequent recorded conversations made by Tennessee Bureau of Investigation Agent Howard Morris (who is not related to the defendant Marty Morris) to Maddle's residence, an individual who identified himself as Maddle's partner once again discussed the methamphetamine shipment that had never been received. This person was subsequently identified at trial as Marty Morris. An agreement was reached whereby Agent Morris, acting undercover as a purported associate of Johnson, would bring a shipment of methamphetamine to Tennessee and receive $10,000 in cash and the title to two Peterbilt trucks as collateral. The remaining money would be paid once the drugs were sold.

In September or October of 1995, Apple coincidentally met Maddle and Morris outside of the Star Motel. The three men discussed the methamphetamine shipment that had been seized by the police. During their conversation, Morris informed Maddle that he wanted to get back the $13,000 that they had paid for the undelivered drugs.

## B. Procedural background

A federal grand jury in the Middle District of Tennessee indicted Morris in Count I of a three-count indictment that was issued in April of 2000. (The other two counts of the indictment pertained to Morris's codefendants.) Count I charged that Morris had been part of a conspiracy to possess and distribute methamphetamine, in violation of 21 U.S.C. § 846. Morris pled not guilty. The other defendants, Apple, Johnson, and Maddle, all entered guilty pleas.

Morris's jury trial began on June 20, 2000. At trial, Morris testified that he never met Johnson, that he had met Apple only on one occasion, and that he had known Maddle for six or seven years. He admitted to using methamphetamine that was obtained from Maddle, but denied any

further involvement in a drug-distribution conspiracy. Although Morris acknowledged that he had loaned Maddle approximately $6,000 (not the $9,000 attributed to him by Maddle), he contended that Maddle had told him that the money was to be used to purchase a truck. He admitted that he subsequently learned that Maddle had used the loan to purchase drugs. Morris also denied offering to pledge two Peterbilt trucks that were used in his transportation business as collateral for the purchase of methamphetamine.

Following a four-day trial, the jury returned a guilty verdict against Morris. The district court sentenced Morris to 121 months in prison, followed by 5 years of supervised release. This timely appeal followed.

## II. ANALYSIS

### A. Sufficiency of the evidence

Morris first contends that the government offered insufficient evidence to support his conviction for conspiring to possess and distribute methamphetamine. In reviewing a challenge to the sufficiency of the evidence presented to establish a defendant's guilt, "we determine whether, after viewing the evidence in the light most favorable to the government, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Crowe, 291 F.3d 884, 887 (6th Cir.2002) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). This inquiry prohibits us from evaluating the strength of the evidence presented at trial or assessing the credibility of witnesses. United States v. Wright, 16 F.3d 1429, 1440 (6th Cir.1994) (explaining that "[i]n cases in which we assess the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury").

"In order to show a conspiracy under § 846, the government must prove, beyond a reasonable doubt, (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." United States v. Gibbs, 182 F.3d 408, 420 (6th Cir.1999) (internal quotation marks omitted). Morris argues that the government's evidence at trial failed to establish any of the elements necessary to sustain his conviction for conspiring to possess and distribute methamphetamine.

With respect to whether alleged members of a conspiracy agreed to violate the law, a conspiracy does not require a formal agreement. Id. (recognizing that "[n]o formal agreement is required" to establish a conspiracy). Instead, "[a] tacit or mutual understanding among the parties is sufficient to qualify as an agreement in a conspiracy charge." Id. (internal quotation marks and citation omitted).

Morris contends that the evidence did not establish that he ever agreed, either expressly or tacitly, to violate federal drug laws. In support of his position, Morris argues that he never had any contact with Johnson, and that the evidence was insufficient to establish that he had made any agreement with Apple. The fact that Morris had never met Johnson, however, does not preclude a finding that Morris was a member of the conspiracy, because a defendant need not know every coconspirator to be guilty of conspiring to commit a crime. United States v. Maliszewski, 161 F.3d 992, 1006 (6th Cir.1998) (explaining that "[o]nce the conspiracy itself has been proven to exist, it is not necessary to show that a defendant knew every member of the conspiracy or knew the full extent of the enterprise") (alteration in original) (citation omitted).

Moreover, the purported absence of evidence that Morris agreed to undertake any illegal actions with Apple is contradicted by the government's proof at trial. Specifically, Apple testified that Morris asked him about the possibility of obtaining a larger shipment of methamphetamine when the two men met at the Hardee's restaurant in Monterrey, Tennessee in November of 1994. Morris's denial that the meeting at Hardee's occurred is further contradicted by Maddle's testimony that Morris was present at the restaurant. As a result, Morris's argument constitutes a direct challenge to the credibility of Apple and Maddle. But such a challenge is not a permissible basis for reversing a conviction on appeal. *United States v. Hernandez,* 227 F.3d 686, 694–95 (6th Cir.2000) (affirming Hernandez's conviction for conspiring to possess and distribute marijuana, after noting that "sufficiency-of-the-evidence appeals are no place for arguments regarding a government witness's lack of credibility") (internal quotation marks, alteration, and citation omitted). The government's proof at trial is therefore sufficient to establish that Morris and Apple agreed to violate the federal drug laws.

Maddle's testimony also demonstrates that he and Morris had, at the very least, a tacit agreement to violate these same laws. In particular, Maddle testified that Morris provided approximately $9,000 to purchase methamphetamine from Johnson. This testimony supports a finding that Morris and Maddle had a mutual understanding that they were going to violate prohibitions against buying, selling, and distributing methamphetamine.

Morris next argues that the government's evidence was insufficient to satisfy the second requirement necessary to sustain a conviction for conspiring to violate § 846—his knowledge of and intent to join the conspiracy. According to Morris, the evidence at most shows that he intended to violate federal drug laws by purchasing methamphetamine for his own personal use. Morris also contends that he did not know the source of the methamphetamine, that he never sold or otherwise distributed the drugs, and that none of the government's witnesses testified that he was aware of the existence of a conspiracy.

The government can establish a defendant's awareness that a conspiracy exists by showing "that the defendant knew the essential object of the conspiracy." *United States v. Ward,* 190 F.3d 483, 488 (6th Cir.1999) (citation omitted). Similarly, the defendant need not be an active participant in every aspect of the conspiracy to prove that he or she intended to join it. Instead, the evidence is sufficient if it shows that the defendant "is a party to the general conspiratorial agreement." *Id.* (citation omitted).

The previously discussed testimony, notwithstanding Morris's views to the contrary, provided ample evidence to support a finding that Morris was aware of the drug conspiracy between Apple, Johnson, and Maddle. His comments on the recorded telephone conversation taped by Agent Morris, moreover, demonstrated his knowledge of and involvement with the undelivered shipment of methamphetamine.

Although Morris argues that he was only a personal user of methamphetamine and that his connections with Apple and Maddle support that position, the amount of methamphetamine that Apple purchased with the $13,000 provided by Morris and Maddle—almost two pounds of the drug—amounted to in excess of 9,000 dosage units. The jury could therefore reasonably conclude that this quantity was inconsistent with an amount acquired solely for the personal use of one person. *See Unit-*

ed States v. Salgado, 250 F.3d 438, 447 (6th Cir.2001) (noting that the large quantity of cocaine involved in the conspiracy contributed to a finding that the defendants intended to distribute the drug).

Finally, with respect to Morris's argument that he never distributed methamphetamine, the government need not prove that Morris completed the underlying offense in order to establish that he conspired to commit the same. Instead, as noted above, the government meets its burden by showing that Morris agreed to violate the federal drug laws, had an awareness of and an intent to join the conspiracy, and participated in the conspiracy. *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir.1999). The fact that the offense was never completed, therefore, does not render Morris's conviction invalid.

Morris's final argument with respect to the sufficiency of the evidence pertains to the third requirement for a conviction under § 846—his participation in the conspiracy. Although Morris insists that he loaned money to Maddle solely for the purpose of repairing a truck, the testimony of Maddle contradicts Morris's position. The jury's apparent decision to credit Maddle rather than Morris, as noted above, is a matter that we will not second-guess on appeal. Similarly, Morris's arguments that he was not present at the Star Motel when the money was exchanged, and that Apple and Maddle did not provide identical testimony regarding whether Morris was with them in the hotel room, are unavailing. The government's evidence, when viewed in the light most favorable to the government, is sufficient to justify a finding that Morris participated in the conspiracy. *See Salgado*, 250 F.3d at 447 (noting that "a defendant's participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances").

■ For all of the reasons discussed above, we conclude that the government's evidence at trial was sufficient to justify the jury's finding that Morris was guilty beyond a reasonable doubt of conspiring to possess and distribute methamphetamine.

## B. Jury instructions

Morris's second argument on appeal challenges the propriety of the jury instructions. In particular, he contends that the district court should have included a "buyer-seller" jury instruction to inform the jury that a defendant is not guilty of being a member of a conspiracy solely because he or she purchases drugs from a conspirator.

Morris, however, did not object to the omission of such a jury instruction in the district court. We therefore review the omission under the plain-error standard. *United States v. Cleaves*, 299 F.3d 564, 567 (6th Cir.2002) (explaining that the plain-error standard of review applies where the defendant does not timely object to the omission of a jury instruction in the district court). "Plain error review is narrow in scope, involving (1) a finding of error (2) that is plain and (3) that affects the defendant's substantial rights." *Id.* The initial question, then, is whether the omission of the buyer-seller jury instruction in the present case was erroneous.

■ In *Riggs v. United States*, 209 F.3d 828 (6th Cir.2000), this court held that "a buyer-seller instruction is unnecessary if the district judge has given a complete instruction reciting all the elements of conspiracy and requirements for membership in a conspiracy." *Id.* at 833. The district court in the case before us followed the Sixth Circuit's pattern jury instructions for a conspiracy offense. This language pro-

vides a complete description of such an offense and includes all of the elements necessary for the government to establish a defendant's involvement in the conspiracy. We therefore conclude that the district court did not err, plain or otherwise, in omitting a buyer-seller instruction in the present case.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.