*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANGELA BALLARD,

      *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

      *Respondent-Appellee.*

No. 03-5117

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
Nos. 01-01240; 96-10060—James D. Todd, Chief District Judge.

Submitted: September 22, 2004

Decided and Filed: March 10, 2005

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Mary C. Jermann, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Jennifer L. Webber, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge. Few aspects of our criminal justice system are as precious as the right to effective counsel and fair representation. We confront that issue squarely with this case and determine that Defendant Angela Ballard's attorney's failure to raise certain legal issues relevant to vacating her sentence on appeal prejudiced the outcome of her case. We therefore **REVERSE** the judgment of the district court and **VACATE** the Defendant's sentence. We **REMAND** this case to the district court for further proceedings consistent with this opinion.

## I. History

On August 18, 1997, Defendant Angela Ballard ("Ballard") and six codefendants, including Cedric Johnson ("Johnson") and Melvin Lee Randolph ("Randolph"), were charged with conspiracy to possess with intent to distribute cocaine, cocaine base and marijuana in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. *United States v. Randolph, et al.*, 230 F.3d 243, 247 (6th Cir. 2000).

1

Between 1995 and 1996, Ballard and the other codefendants were involved in at least seven trips from Dallas, Texas, to Jackson, Tennessee, specifically for the purpose of transporting and delivering cocaine, or cocaine and marijuana. Ballard served as a "mule," driving cars to and from Tennessee that contained either drugs or money for the drugs. The amount of cocaine transported each trip varied between two to five kilograms. Marijuana was transported in addition to cocaine on at least two of these occasions. It is unclear, however, whether Ballard was responsible for transporting marijuana, in addition to cocaine, during these trips.[1]

In March 1996, the group began a trip in two cars from Dallas to Jackson, transporting at least three kilograms of powder cocaine and 863 grams of cocaine base. Ballard and Randolph were stopped by Texas Department of Public Safety Officers while driving in one of the two cars used during this trip. The police found cocaine and cocaine base in the trunk of the car, and the two were arrested on drug charges.[2]

Ballard and Randolph were tried together on the conspiracy charge in December 1997. On December 12, 1997, the jury returned a general verdict form that found both guilty of the conspiracy charge. Because the verdict was delivered on a general verdict form, it did not distinguish what specific substances Ballard and Randolph were convicted of transporting. Based upon his evaluation of the evidence, including a presentence report, the district court judge then determined that Ballard was involved only in the distribution of cocaine. Under the U.S. Sentencing Guidelines, mandatory at the time of sentencing,[3] the judge's determination resulted in Ballard receiving a higher sentence than she would have if she had distributed only marijuana. She was sentenced to 151 months of incarceration, with five years of supervised release.[4]

Shortly following Ballard's trial, Johnson, another co-defendant, was found guilty in a separate trial of the same conspiracy charge. At the trial, Johnson's attorney "requested that the district court submit a special verdict form to the jury, for the purpose of ascertaining whether Johnson was guilty of conspiracy to possess with intent to deliver *cocaine*, or whether his part in the conspiracy pertained merely to *marijuana*." *Id*. at 251-52. Although the district court denied Johnson's motion, this court reversed that decision, holding that "the trial court effectively denied Johnson access to the jury with respect to this important question of fact." *Id*. at 252. Relying on our decision in *U.S. v. Dale,* 178 F.3d 429 (6th Cir. 1999), this court reasoned:

> [o]ur decision in *Dale* makes clear that if the government seeks imposition of a sentence reflecting culpability for an object of a conspiracy carrying greater than the least grave sentencing consequences, it, the government, must also seek a special verdict.

*Id.*

In the same consolidated appeal, this court upheld Ballard's conviction and sentence. *Id*. Ballard then moved to have her sentence vacated pursuant to 28 U.S.C. § 2255. Her motion claimed that she was denied effective assistance of counsel because her attorney, unlike Johnson's attorney, did not request a

---

[1] Evidence submitted at trial indicated that Ballard participated in at least three trips, allegedly transporting an unknown amount of illegal substance in each trip. Trial Tr. Sentencing Hearing at 18.

[2] This court has previously detailed the events surrounding the conspiracy and Ballard's arrest. *Randolph*, 230 F.3d. at 245-48.

[3] *See U.S. v. Booker,* 125 S.Ct. 738 (2005) (Breyer, J.) (holding that mandatory sentencing guidelines established with the Federal Sentencing Act violate the Sixth Amendment of the U.S. Constitution).

[4] Randolph received a sentence of 360 months' incarceration followed by a ten year supervised release. This court reversed Randolph's conviction, finding that his prosecution was in violation of his plea agreement in the Northern District of Texas.

special verdict form or raise legal arguments pertaining to case law established in the cases of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999). Ballard's motion also claimed entitlement to relief pursuant to *Apprendi* and *Dale.*

The district court denied Ballard's § 2255 motion, but granted Ballard a certificate of appealability, noting that:

> [Ballard's] claim that she received ineffective assistance of appellate counsel due to the failure of her attorney to raise the *Dale* and *Apprendi* issues on direct appeal presents an issue that is debatable among jurists of reason, particularly in light of the fact that Cedric Johnson ... had his sentence vacated on direct appeal on the basis of *Dale.*

Joint Appendix ("J.A.") at 59.

## II. Analysis

We now turn to the question of whether the district court erred in denying Ballard's § 2255 motion – specifically, whether Ballard received ineffective assistance of appellate counsel due to the failure of her attorney to raise her *Apprendi* and *Dale* issues on direct appeal, and whether Ballard is entitled to relief pursuant to *Apprendi* and *Dale*. We examine each of those issues individually.

In hearing an appeal from a lower court's denial of a § 2255 motion, this court reviews legal conclusions *de novo* and factual findings for clear error. *Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999).

In evaluating a claim of ineffective assistance of appellate counsel, we look to the analysis established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). The *Strickland* test involves two prongs: the "performance prong," where a petitioner is required to show that her attorney's representation "fell below an objective standard of reasonableness," *id.*, and the "prejudiced prong," which requires the petitioner to demonstrate that there exists "a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different," *id.* (emphasis added).

Our court has made clear that "in reviewing a lawyer's performance, a court's 'scrutiny . . . must be highly deferential.'" *Caver v. Straub*, 349 F.3d 340, 348-49 (6th Cir. 2003) (citations omitted); *see also Strickland*, 466 U.S. at 689 (noting that there is a "strong presumption" that the accused counsel's conduct is reasonable). A fair assessment of attorney performance requires that every effort be made "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* Further, the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal." *Caver*, 349 F.3d at 348-49. Indeed, we have recognized that the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Id.* (citations omitted).

In the instant case, Ballard's appellate counsel failed to raise either the *Apprendi* or *Dale* issues on direct appeal. J.A. at 53. In *Dale*, like the case before us, the defendant's counsel did not object to the use of a general verdict form. *Dale*, 178 F.3d at 433. The jury returned a general verdict of guilty on a conspiracy count that did not indicate which drugs the defendant was convicted of transporting. On appeal, we held that in sentencing a guilty defendant, a district court

> cannot exceed the shortest maximum penalty authorized in the statutes criminalizing the multiple objects if the punishment authorized by the conspiracy statute depends on the punishment provided for the substantive offenses which were the objects of the conspiracy . . . [Moreover,] when the jury returns a general verdict to a charge that a conspiratorial

agreement covered multiple drugs, the defendant must be sentenced as if he distributed only the drug carrying the lower penalty.

*Id.* at 432.  This court went on to determine that "the district court committed plain error when it sentenced [the defendant] using the statutory maximum sentence for crack rather than for marijuana."  *Id*. at 434.

Similarly, the Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi,* 530 U.S. at 490.  This court has interpreted *Apprendi* to apply to determinations of drug type and quantity: "[F]ailure to instruct the jury to determine both the type of drug, and the drug quantity involved in the conspiracy amounted to plain error."  *United States v. Cleaves*, 299 F.3d 564 (6th Cir. 2002); *see also United States v. Copeland*,  321 F.3d 582, 603 (6th Cir. 2003) ("[W]here drug quantity is not proved beyond a reasonable doubt, a defendant's sentence cannot exceed the statutory range" provided for in the statute).[5]

Though neither the *Apprendi* nor the *Dale* holdings were in effect at the time of Ballard's initial trial, both were decided while Ballard's case was on direct appeal.  And while we do not require attorneys to foresee changes in the law, once a change – particularly an important and relevant change – does come about, we do expect counsel to be aware it.  *See Johnson v. United States*, 520 U.S. 461, 468 (1997).  As such, we believe that Ballard was fully entitled to the benefit of legal arguments relying on both those opinions.  *See Teague v. Lane*, 489 U.S. 288, 310 (1989) (finding that the defendant could raise a claim on appeal that relied on a holding established after the trial's conclusion but before the appellate process had been exhausted).

 In her brief to this court, Ballard claims that her appellate counsel was aware that Johnson's attorney successfully raised both *Apprendi* and *Dale* arguments on appeal – and even reviewed the brief submitted by Johnson's attorney – yet still chose not to raise them on Ballard's behalf.  Appellant's Br. at 7.  In addition, a review of the trial transcript indicates that it is not immediately clear, based on evidence presented to the jury, which illegal substance Ballard was guilty for conspiring to transport.[6]  Taking both of these issues into consideration, we believe it fully reasonable to expect Ballard's attorney to raise a legal argument supported by the *Dale* or *Apprendi* cases.

That Ballard's appellate counsel either ignored *Dale* and *Apprendi*, or failed to review the trial transcripts, could, standing alone, render appellate counsel's performance deficient.  When combined with the fact that Ballard's co-defendant successfully briefed and won those same issues on appeal – and that the co-defendant's brief was available to Ballard's appellate counsel, but presumably went unused – the performance was objectively unreasonable.  There is simply no rational basis for completely foregoing an argument that was not only potentially, but actually, successful.  Accordingly, we find that the performance prong of *Strickland* is satisfied.

Our inquiry, of course, does not end there.  For though we find that Ballard's counsel performed in an objectively unreasonable manner, we must also be convinced that there is "a reasonable probability" that "the result of the proceeding would have been different" but for her attorney's errors.  *Strickland*, 466 U.S. at 694.  As this court recently explained:

---

[5]The Supreme Court's recent decision in *U.S. v. Booker*, 125 S.Ct. 738 (2005), serves to strengthen and solidify this aspect of *Apprendi*.

[6]At various points during the trial, testimony referred to the drugs Ballard allegedly conspired to transport merely as "dope" or "drugs," and there is no record of any clarification to the jury on whether these general words referred to cocaine or marijuana, or both.  *See United States v. Randolph*, Case No. 96-10060 (W.D. Tenn. Dec. 11, 1997).

The question presented here is whether an appellate counsel prejudices a client where the attorney fails to raise on appeal a [meritorious] claim. We answer in the affirmative, because but for the appellate counsel's ineffectiveness, there is a reasonable probability that the result of the [] appeal may have been different.

*Caver v. Straub*, 349 F.3d 340, 349-50 (6th Cir. 2003). We therefore examine whether Ballard was entitled to relief under *Dale* and *Apprendi*, for if she was entitled to such relief, her attorney's error would clearly have altered the outcome of the appeal. Relief is due if the court is found to have improperly sentenced the defendant, in violation of the principles set forth in both the *Dale* and *Apprendi* opinions.

We apply a plain error standard of review to evaluate whether the court improperly determined Ballard's sentence by instructing the jury to produce a general verdict. *United States v. Cleaves*, 299 F.3d 564, 567-68 (6th Cir. 2002). Plain error review is narrow in scope, involving (1) a finding of error (2) that is plain, and (3) that affects the defendant's substantial rights. *Id.* In addition, "even if all three of these factors are present, we will reverse on the basis of such error only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 568 (citations omitted).

Applying the first three factors, we find that it was plain error for the trial court to use a general verdict in sentencing Ballard. It was clear during Ballard's appeal, under the law established in *Apprendi* and *Dale,* that the district court was wrong to use a general verdict form that did not require the jury to indicate drug type or quantity. *Cleaves,* 299 F.3d at 568 ("Under *Apprendi*, failure to instruct the jury to determine both the type of drug, and the drug quantity involved in the conspiracy amounted to plain error.")[7] We also find that the district court's sentence violated the defendant's substantial right to a trial by jury as guaranteed in *Apprendi*. The district court reached this same conclusion, acknowledging that "it could be argued, on the basis of Sixth Circuit law at the time of [this district court's] August 13, 2002, order, that Ballard's sentence violated *Apprendi* because she was subject to a statutory minimum ten-year sentence without a jury finding on drug quantity." J.A. at 56.

The final step of our inquiry, however, requires us to examine whether this plain error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Cleaves* at 568; *see also Wright,* 182 F.3d at 463 (citations omitted) ("[I]n order to prevail on his § 2255 motion, [the defendant] 'must show a fundamental defect in [her] sentencing which necessarily results in a complete miscarriage of justice or an egregious error violative of due process.'") The district court found that the evidence presented to the jury in support of the allegation that Ballard conspired to distribute cocaine only was so overwhelming that it was unnecessary to examine the error's effect on the integrity of the judicial proceedings. J.A. at 52. *See Cleaves*, 299 F.3d at 569 (finding it unnecessary to examine the effect of a plain error on the judicial proceedings because "no rational jury could have found that [the defendant] was involved in a conspiracy to distribute marijuana rather than cocaine").

After reviewing the record, we disagree with the district court's determination. Based on testimony presented during her trial, we find instead that it is possible that a rational jury could have found that Ballard was involved in a conspiracy to distribute marijuana *and* cocaine. While the pre-sentence report noted that when Ballard was arrested she was driving a car that contained about four kilograms of cocaine, evidence presented during Ballard's trial indicated that on other occasions Ballard was a driver for Trent Brewer and Melvin Randolph. In his testimony to the court, Trent Brewer noted that he occasionally included marijuana with the cocaine shipments. *Randolph*, Case No. 96-10060 (Trial Tr. of the Evidence at 12). Even more compelling, however, is testimony presented throughout Ballard's trial that generically referred to the illegal substances she was accused of conspiring to transport as either "drugs" or "dope." Whenever specific

---

[7]The fact that *Apprendi* and *Dale* were not decided until after Ballard's trial is irrelevant because they were in effect as law at the time of her appeal. *See, e.g., Johnson v. United States*, 520 U.S. 461, 468 (finding that "where the law at the time of trial was ... clearly contrary to the law at the time of appeal - it is enough that an error be 'plain' at the time of appellate consideration").

substances were mentioned, both marijuana and cocaine were named together. The attorney for the United States even noted to the jury that Ballard transported "drugs" on a "path that was used to distribute and to deliver cocaine and marijuana," *id.* (Closing Arguments, Trial Tr. at 19), and described the main "goal" of the conspiracy as "getting drugs from Dallas, Texas to Jackson Tennessee." *Id.* (Closing Arguments, Trial Tr. at 15). On these grounds, we think it is entirely possible for a rational jury to conclude that Ballard conspired to transport marijuana and cocaine.

Given that there is no overwhelming evidence to support the trial court's determination that Ballard should be sentenced as though the jury found her guilty only of conspiring to distribute cocaine, we rely on this court's reasoning in *Dale* to determine that the trial court's use of a general verdict in sentencing the defendant led to "a manifest miscarriage of justice." *Dale*, 178 F.3d at 432. As in *Dale,* and as in the case of Ballard's codefendant, Johnson, a rational jury could have found Ballard guilty of a conspiracy to distribute marijuana and cocaine and therefore find that she is entitled for relief under *Apprendi*.

Accordingly, because we find that the district court was in plain error in sentencing Ballard based on the jury's general verdict, and because we conclude that the error amounts to a miscarriage of justice that "seriously affects the fairness, integrity, or public reputation of judicial proceedings," *Cleaves* 299 F.3d at 568, we hold that the failure of Ballard's appellate counsel to raise *Dale* and *Apprendi* issues on appeal had a direct effect on prejudicing the outcome of her appeal.

### III. Conclusion

Our court is charged with ensuring equal justice under the law for all who come within the walls of our judicial system. If we turn a blind eye to the inequities that result from ineffective legal representation, we jeopardize the integrity of justice itself. It is with a deferential and respectful eye that we **REVERSE** the district court's decision and **VACATE** the sentence of Angela Ballard. We **REMAND** her case for re-sentencing in accordance with this opinion.